Christian M. Knox (SBN 171780)
christian@rudermanknox.com
Colleen A. Snyder (SBN 274064)
colleen@rudermanknox.com
Lindsay A. Whyte (SBN 317832)
lwhyte@rudermanknox.com
Ruderman & Knox, LLP
1300 National Drive, Suite 120
Sacramento, CA 95834
Telephone: 916-563-0100
Facsimile: 916-563-0114

Attorneys for Student

UNITED STATED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C., by and through his guardians ad litem, T.C. and T.B., and T.C. an T.B., as Individuals,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>SEQUOIA UNION HIGH SCHOOL DISTRICT,<br><br>　　　　　　　　Defendant. | **CASE NO.:** Unassigned<br><br>**COMPLAINT FOR RELIEF UNDER:**<br><br>1. **Section 504 of the Rehabilitation Act of 1973**<br><br>2. **The California Unruh Act**<br><br>**TRIAL BY JURY REQUESTED** |

## JURISDICTION

1. This Court has original jurisdiction over the federal claims within this complaint pursuant to 28 U.S.C. § 1331. In addition, a common nucleus of operative facts exists as to Plaintiff's state and federal claims. Consequently, this Court has supplemental jurisdiction over the state law clams pursuant to 28 U.S.C. § 1367.

## VENUE

2. Venue is proper in this Court under 28 U.S.C. § 1391(b).

3. All of the events that are at issue in this dispute took place within the Northern District of

California.

4. Plaintiff resides within the Northern District of California.

5. Defendant Sequoia Union School District is a public entity located within the Northern District of California.

## PARTIES

6. **Plaintiff J.C.** is a sixteen-year-old student who is eligible for special education under the categories of emotional disturbance and other health impairment. J.C. is entitled to the legal rights and remedies set forth in the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., and qualifies for protections under Section 504 of the Rehabilitation Act of 1973. At all relevant times, J.C. has been a student within the Sequoia Union High School District.

7. **Plaintiffs T.C. and T.B.** are J.C.'s parents and share legal and physical custody of J.C. and jointly hold J.C.'s educational rights.

8. **Defendant Sequoia Union High School District** (the "District") is a public education agency organized and existing under the laws of the State of California and located within San Mateo County. The District receives federal financial assistance for its educational programs.

## BASIS OF THE DISPUTE

9. Education is a "fundamental interest" under the California Constitution, and plays an "indispensable role" in the "modern industrial state." *Serrano v. Priest,* 5 Cal.3d 584, 605 (1971) (*Serrano I*); *Butt v. State of California*, 4 Cal.4th 668, 681 (1992). The California Supreme Court has recognized that "all California children should have equal access to a public education system that will teach them the skills they need to succeed as productive members of modern society." *O'Connell v. Superior Court*, 141 Cal.App.4th 1452, 1482 (2006). As such, school districts cannot offer and provide students with an educational program which "falls fundamentally below prevailing statewide standards."

*Butt*, 4 Cal.4th at 681.

10. Because education is a fundamental interest under the California Constitution which requires that all California children have equal access to a public education system, an action that impacts the fundamental right to basic educational equality is subject to strict scrutiny. *See, e.g., Serrano v. Priest*, 18 Cal.3d 728, 761, 766 (1976) ("Serrano II").

11. The District violated J.C.'s right to equal access to education due to his disability in violation of Section 504 of the Rehabilitation Act and California Unruh Civil Rights Act, Civil Code §§ 51, *et seq*. J.C. suffered bullying at school which interfered with his rights to meaningfully access and enjoy a free appropriate public education. The District failed to provide J.C. with a reasonable accommodation to prevent and address the bullying. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). As a result of the District's actions, J.C. suffered damages and will continue to suffer damages in an amount according to proof.

## FACTUAL ALLEGATIONS

12. J.C. is sixteen years old and in the eleventh grade. He has a history of anxiety, depression, traumatic brain injury, substance abuse, suicidal ideation, and was diagnosed with Attention Deficit-Hyperactivity Disorder, Complex Trauma, Language Disorder, and learning disabilities.

13. During the 2017-2018 school year, J.C. was in the ninth grade within the boundaries of the District.

14. On October 17, 2017, J.C. and his teammates were in the weight room when one of the students put his arm around J.C.'s neck and began to choke him from behind. J.C., unable to breathe, fainted when the student let go. As he fell, J.C. hit his head on an angled steal plate on a weight machine, and then hit his head on the ground. Bystanders witnessed J.C. suffer from a grand mal seizure. School officials told J.C.'s mother to take him home. However, she took him to urgent care and his father was instructed to transport him to

Stanford Medical Center. A doctor's report revealed that J.C. had lost oxygen to his brain from the choke hold, and that he had suffered a substantial laceration to his scalp with profuse bleeding. At Stanford Medical Center, J.C. was diagnosed with a traumatic brain injury. A series of follow-up appointments with his pediatrician revealed that J.C. had not made significant improvements and required school accommodations.

15. J.C. was bullied by his peers because of his disability.

16. T.B. and T.C. immediately contacted the principal and advised the vice principal, Sophia Olliver, of the bullying. Ms. Olliver failed to take any action to protect J.C. or make a report to child protect services.

17. On October 24, 2017, J.C. was changing in the football locker room when two students pulled J.C.'s pants down and another student performed a simulated sexual assault from the rear. The assailant pushed J.C. into his locker, causing him to hit his head on the metal. When he came home that day from school, J.C. was so distraught and humiliated from the incident that he pointed a large kitchen knife at himself. He described that he was being continuously bullied for being adopted and for having a seizure in the weight room. When J.C.'s parents approached the District, they were told that J.C.'s story could not be corroborated.

18. T.B. and T.C. again contacted the principal and advised vice principal Olliver of the bullying. Ms. Olliver failed to take any action to protect J.C. or make a report to child protective services.

19. J.C. continued to be bullied for reporting the incident and began acting defiantly at school. He did not make significant academic progress and continued to suffer from the adverse effects of his concussion.

20. On or about April 27, 2018, J.C. told his mother that he could not return to campus, revealing that four boys in his physical education class, who were affiliated with a local gang, had been flashing knives on campus and had robbed J.C. twice. Further, when J.C. had gone into the Sequoia Gym 2 bathroom, the same four boys were inside, smoking

marijuana, and began to repeatedly hit him and threaten him. J.C.'s parents did not allow J.C. to return to campus.

21. That same day, J.C.'s parents wrote to Superintendent of Schools, Mary Streshley, to request an emergency meeting to discuss the unacceptable and unsafe situation at Sequoia High School. Further, they requested that J.C. be immediately removed from his physical education class and be transferred out of Sequoia High.

22. On May 1, 2018, J.C.'s parents met with Ms. Streshley, who conceded that the District had fallen short on J.C.'s special education services and communication to his parents.

23. On May 3, 2018, Vice Principal Olliver, whom Ms. Streshley had agreed to remove from J.C.'s IEP team, sent an email insisting that there were no safety concerns, stating she "want[ed] to reiterate that there [were] no findings on [their] end that would consider this a safety or adjustment transfer." However, she concluded, the IEP team decided J.C. could benefit from a "fresh start" from the upcoming school year. Ms. Olliver should not have been involved in the discussion of J.C.'s IEP or placement after she was removed from the IEP team.

24. On May 9, 2018, the District held an IEP meeting to discuss services and supports, as well as parent concerns about the continued bullying on the Sequoia campus. The District offered an Independent Study Program with a Study Skills class on the Sequoia campus, stating it to be a "temporary fix." J.C.'s parents consented to the Independent Study Program but asked that the Study Skills class take place on the Carlmont High School ("Carlmont") campus, rather than on the same campus where J.C. was the victim of repeated bullying. The District did not agree.

25. Due to expressed safety concerns at the Sequoia campus, it was inappropriate for the District to have J.C. attend a class there. The District should have made accommodations to allow J.C. to take his Study Skills class at Carlmont.

26. J.C. began to suffer suicidal ideations, was afraid to go to school, and was self-medicating to alleviate the symptoms of his deteriorating mental health. J.C. also became susceptible to following directives of peers to avoid the consequences of bullying.

27. During the 2018-2019 school year, J.C. was in the tenth grade within the boundaries of the District and was attending Carlmont.

28. On September 24, 2018, J.C. was found to be in possession of vape juice, vape pod mouthpieces with marijuana flakes inside, and a Juul device. He told staff that he had been instructed by another student to deliver the items to a third student. J.C. was suspended for three days following the incident.

29. Though his parents met with Vice Principal Patner at Carlmont, Mr. Patner was not proactive in taking steps to ensure that J.C. met with his counselor or the school psychologist.

30. On October 1, 2018, J.C.'s parents reached out to Mr. Patner to inquire whether the staff had met with their son. Mr. Patner replied he would "follow up" with the academic counselor and the school psychologist. Given J.C.'s history in the District, as well as his suspension at the beginning of the school year, the District should have conducted a functional behavior assessment and developed a behavior intervention plan ("BIP") to ensure that J.C. was receiving necessary behavioral support.

31. In November 2018, J.C. was once again disciplined by staff for "suspicious behavior" when he was found in a bathroom where three other boys appeared to be vaping. According to the school report, J.C. had done nothing wrong, but was present in the bathroom where other boys were vaping. J.C. was suspended for three days. The disciplinary action was inappropriate and continued to create a barrier of mistrust between J.C. and the school.

32. On December 4, 2018, the District convened an IEP team meeting at parents' request to address concerns that, according to J.C.'s private psychologist, he may have low level autism and required in-school counseling for social skill deficits and other service to access his education.

33. J.C.'s mother made multiple requests for transition services, more accommodations, and on-site school counseling for J.C. The District failed to offer any such services.

34. On February 6, 2019, J.C. was found to be in possession of a 2 ½- inch locking blade knife in his sock. J.C. revealed that a male student who had bullied him multiple times at the

Sequoia campus and was part of the locker room assault, had demanded that J.C. give him two hundred dollars by Friday of that week or he would "pop him." The student told J.C. that there were people at Carlmont, who were part of his gang, who had been watching J.C. J.C. felt genuine anxiety in the face of this threat, as Carlmont High School had suffered a gang-related murder of a student only a few weeks earlier. J.C. was suspended for five days for carrying a knife.

35. On February 9, 2019, J.C.'s parents wrote a letter to the District stating that while they took the incident seriously, they believed his actions were related to his disability, particularly his impulsivity, fear of violence, and inability to grasp consequences, as well as his past experiences of bullying within the District and the facts surrounding the current incident. J.C.'s parents believed there was a credible threat against him, and that J.C. did not intend to seek out violence by bringing the knife to school.

36. On February 13, 2019, Carlmont Principal Ralph Crame sent a letter to J.C.'s parents stating that the IEP team had determined J.C.'s conduct on February 6th was "caused by or had a direct and substantial relationship" to his disability and was also a direct result of a failure to implement his IEP.

37. J.C.'s mental health continued to deteriorate so much that his parents had to place him in a residential treatment center out-of-state. J.C. has continued to struggle with his mental health and has required hospitalizations and a higher level of care. Since February 2019 and as of the filing of this complaint, J.C. has been placed in four different treatment programs.

## FIRST CAUSE OF ACTION

### *Violation of Section 504 of the Rehabilitation Act of 1973*

38. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint.
39. With respect to the District's academic and other programs, J.C. is a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act of 1973 in that he has a physical or mental impairment that substantially limits his ability to perform

one or more major life activities and who meets the essential eligibility requirements for the receipt of education and other services provided by the District.  29 U.S.C. § 705(20) (2014); 34 C.F.R. § 104.3(j) (2017).

40. The District operates a program or activity that receives federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973.  29 U.S.C. § 794 (2016).

41. The District does not enjoy absolute, qualified Eleventh Amendment or other immunity with respect to J.C.'s claims under Section 504 of the Rehabilitation Act.

42. To the extent that the IDEA requires J.C. to exhaust his administrative remedies before bringing any 504 claims, J.C. has filed a due process complaint with the Office of Administrative Hearings which will satisfy those requirements.

43. By failing to provide J.C. with the accommodations to which he was entitled, the District violated the non-discrimination mandate set forth in Section 504 of the Rehabilitation Act and its implementing regulations.  29 U.S.C. § 794 (2016); 34 C.F.R. §§ 104.41-104.47. More specifically, the District knew that the bullying J.C. suffered was related to his disability and substantially likely to interfere with his right to receive a free appropriate public education, yet the District failed to provide J.C with accommodations that would diminish that likelihood.

44. Providing J.C. with the accommodations to which he was entitled would not have caused an undue burden or hardship for the District.

45. The District knowingly, deliberately, and wrongfully discriminated against J.C. in violation of Section 504 by failing to provide him with an adequate or appropriate education.

46. In particular, during the 2017-2018 school year through the 2018-2019 school years, the District knowingly, deliberately, and repeatedly failed to provide J.C. with an educational program and related aids and services that were designated to meet his individual education needs as adequately as the needs of non-disabled students of the District in violation of Section 504; 34 C.F.R. §§ 104.4 and 104.3, each of which authoritatively construe the statute.  Specifically, J.C. required accommodations that would provide him with protection from bullying in order to equally access the benefits of public education.

47. Additionally, during the 2017-2018 through 2018-2019 school years, the District knowingly, deliberately, and repeatedly failed to ensure that the programs and services provided to J.C. resulted in significant learning and conferred a meaningful benefit.

48. At all relevant times, the reasonable accommodations necessary to provide J.C. with meaningful access to education were available to the District but were not offered or provided to him.

49. During all relevant times herein, the District was aware of the bullying that J.C. suffered while attending school within the District, yet the District failed to act to protect J.C. The District knew or had reason to know that J.C. required accommodations to provide him with a safe learning environment, free from bullying. The District excluded J.C. from and denied him access to such reasonable accommodations.

50. The District's deliberate indifference to J.C.'s federally protected rights, as set forth above, resulted in discrimination against J.C. and denied J.C. equal access to the benefits of education.

51. The District's deliberate indifference in violating J.C.'s rights under Section 504 was a substantial factor in causing him to suffer personal injury and harm. At all relevant times, the District administrators, officials, and employees had knowledge that it was substantially likely that their acts and failure to act, as set forth herein, would harm J.C.'s federally protected rights to be free from discrimination, and to have equal access to education and reasonable accommodations with respect to his educational disability. Despite this knowledge, the District administrators, officials, and employees failed to act upon the likelihood, thereby causing severe injury to J.C.

52. The District's deliberate indifference to J.C.'s federally protect rights, as set forth above, resulted in discrimination against J.C. and denied J.C. reasonable accommodation for his educational disability and meaningful access to public education in California, thereby entitling J.C. to recover special and general damages for educational loss and psychological harm from the District under Section 504 of the Rehabilitation Act in an amount according to proof at trial.

///

## SECOND CAUSE OF ACTION

*Violation of California's Unruh Act (California Civil Code § 51, et. seq.)*

*(Against the District)*

53. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint.

54. The District operates business establishments within the jurisdiction of the State of California, and as such are obligated to comply with the provisions of the California Unruh Civil Rights Act, Civil Code §§ 51, *et seq*. ("the Unruh Act").

55. The conduct previously alleged violates the Unruh Act.

56. The Unruh Act guarantees, *inter alia*, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California.

57. The District violated that Unruh Act by, *inter alia*, denying J.C., a person with disability, the full and equal accommodations, advantages, privileges, or services offered by the District, namely, the benefit of public education.

58. The District has violated the Unruh Act by, *inter alia*, failing to provide educational services on a nondiscriminatory basis; failing to ensure that J.C. had access to an educational placement free from bullying, and accommodations to enable him to access his education in a manner equal to his peers.

59. The District's violations of the Unruh Act were intentional in that the District engaged in acts, practices, or omissions that had the foreseeable effect of discriminating against J.C.

60. Pursuant to the remedies, procedures, and rights set forth in California Civil Code § 52, plaintiff prays for judgment as set forth below.

61. In doing the acts and omissions alleged herein, including failing to offer or provide J.C. with a safe learning environment, free from bullying, the District knew or should have known that its conduct was directed to J.C., a person with disabilities, thereby entitling

plaintiff to recover treble damages, penalties and/or other such remedies pursuant to California Civil Code § 3345, in addition to remedies provided as detailed above.

## REQUEST FOR RELIEF

Plaintiffs respectfully request the following relief:

a. General and special damages to J.C. for harm suffered, including educational losses and psychological injuries, opportunities denied, and deprivation of rights in an amount according to proof;

b. General and special damages to T.B. and T.C. for harm suffered, including educational losses and psychological injuries, opportunities denied, and deprivation of rights in an amount according to proof;

c. An award of costs, disbursements, and reasonable attorneys' fees and expenses; and

d. Such other and further relief as this Court may deem just and proper.

DATED: April 27, 2020                                RUDERMAN & KNOX, LLP


/s/ Christian M. Knox
CHRISTIAN M. KNOX
Attorneys for Plaintiffs